141063 Richard Wayne Boone II v. Daniel H. Heyns et al. Arguments not to exceed 15 minutes per side. Mr. Farrell for appellants. Good afternoon, Your Honors. Jim Farrell appearing on behalf of the defendants here, the state defendants, the MDOC defendants. I'd like to reserve five minutes in our rebuttal. Your Honors, this is a preliminary injunction, interlocutory appeal on a preliminary injunction issued by Judge Tarnow. It's the state defendant's contention that the plaintiff failed to make the requisite showing necessary to support issuance of a preliminary injunction in his favor. Judge Tarnow, he'd listened to the plaintiff via two-way video in the courtroom at the hearing on December 19th of last year. Plaintiff told, and the judge said, okay, what's the problem? And the plaintiff told him, he said, I'm in a great deal of pain. I'm to the point, I'm either, I'm both homicidal and suicidal because they took away my air mattress and my knee brace and the pillow I use to put between my knees when I sleep. So that's what he said. And so Judge Tarnow listened to me and co-defense counsel, and we basically echoed each other in explaining what the prison physician's viewpoint is, or was with regard to Mr. Boone. We explained to the judge, Mr. Boone is a late 40s, white male, he's obese, he's got arthritis. He has some medical concerns. The doctors, you know, are aware of Mr. Boone's concerns. I mean, from the top to the bottom, you know, he's not being forgotten. He's not left in a cell to rot away and being forgotten. He is being seen by a doctor once a week. I mean, nurses are seeing him twice a day to give him his medications. I mean, even the chief medical officer for the Department of Corrections has reviewed his treatment plan. And what they see is that, and what the physicians did for him was they said, this is what you need to do, Mr. Boone. You need to lose weight, you need to exercise, and you need to take your medication as scheduled. And they told him, they said, well, for six months we'll give you the air mattress, we'll give you the knee brace, we'll let you have a pillow, but it's a transition period and we want you to lose weight and exercise and take your medication. And he did during that period of time. He lost about nine pounds. And then they took these special accommodations for these medical appliances, they took them away. And he, that's when he, you know, he was sending letters to everybody, to the governor, to the attorney general, to the court. His family was doing that, his mother and father, his wife. And that's when Judge Tarnow got involved. Here's the district judge basically saying this guy is being a total gadfly playing. You can buy his silence if you just give him an air mattress and a knee brace, which he's had for a long time, hadn't caused any problems, no burden to you. It might get some peace for you and for me. You can understand the practical constraints that he was operating under. Your Honor, I'd be more charitable to Judge Tarnow. I mean, I think Judge Tarnow... I thought I was being pretty charitable. He was being quite practical. Well, and also he was being, I think he was very concerned. And he said, on the record, he said, you know, when I have a... You know, he told the lawyers, he said, listen, I'm not a doctor. I don't want to sit here and debate the medical system. Irreparable harm, clearly. He says, when I have a prisoner calling me up telling me that he is in such pain that's driving him to thoughts of suicide, you know, the one thing we don't do is do nothing. He says, you know, talking to me, he says, just give him the air mattress, would you, you know? Give him the air mattress. And so, you know, and I agree, it's not a burden. You know, it's not a huge burden on the state to give him the mattress. The mattress just took up a collection. Go to Craigslist. And the funny thing... I mean, obviously the state has every right to be here, no question about it. But, I mean, what is at stake here for your client? Well, it's, you know, my client wants me here. Because they feel this is an offense to their sovereignty. It's, you know, we're having a judge, a district judge, and I like Judge Tarnow. He's a very nice judge, and he's a very concerned judge about these prisoners. And he's trying to help this guy out, and, you know, I've got a client who's telling me, hey, we've got our own doctors. We don't need a federal judge second-guessing our doctors. And, you know, and this is a very small matter. It's an insignificant matter. I understand that. But it has larger implications. We have, you know, 45,000 prisoners. You know, we could certainly... Run on air mattresses? I'm not suggesting we're going to get 40,000 requests for air mattresses. Well, certainly, though, I mean, the group of prisoners that have Mr. Boone's profile of these car wrecks, et cetera, gets you down to a pretty small number. I mean... I think he actually shot himself during his last crime. I think that's where some of these injuries have come from. Does that matter? No, it doesn't matter at all. It's just a little... I mean, there is an answer to the Floodgates... Excuse me?  No, no, by accident. I think he was... It was a bad shot. It was a really bad shot. But there's an answer to the Floodgates argument, which is, you know, not everybody's got the history this guy has. And I agree, Your Honor, that Floodgates... You know, I hear that from my client all the time. Fight this, fight that. Because of the Floodgates, we're going to get inundated with these claims. We're inundated with lawsuits. If we pay this guy $5, we're going to get a million lawsuits. And I don't necessarily buy that argument. But I do recognize that, you know, the court has standards. The Sixth Circuit has standards about issuing preliminary injunctions. And I know these courts should be reluctant to second-guess our doctors. And, you know, when the doctors say, really this is actually going to be harmful to him to give him the mattress, to let him keep the mattress, let him keep the knee brace, because it's going to retard his rehabilitation. As I read the record, the argument that it would be affirmatively harmful really only applied to the knee brace on the atrophying of the muscles. The air mattress, that was not a source of harm to allow him to continue to use it. You're absolutely correct. Wasn't there an initial? The surgeon was the one that initially said he should get an air mattress, right? I'm sorry, Judge, I didn't hear. The surgeon who performed the hip replacement initially said he should get an air mattress. Oh, I believe that's correct. Did he say for 60 days, for a year, or forever? There was no time limitation on that. There was no time indication as to how long he should have the mattress. But typically the standard for the MDOC, they issue these for either specific post-surgical thing or they'll do it if they have ulcers, essentially. Will the record tell us how much of the prison's position and opposition to the continued use of the air mattress was based on our standard policy is you don't get one? No, I don't think so. How much of it was based on we have a fairly old prescription from a doctor, if it can be called a prescription, and our own people have now looked at it independently and we don't think there's a medical need? That's the reason. That's exactly the reason. I mean, yes, I know outside physicians, we're not obligated to follow the recommendations of outside physicians. They often do in here, but they evaluate it. They continuously evaluate this patient, and they're saying this is not in your best interest. For him, it's a comfort issue. But his claim that I'm suicidal, I'm homicidal, that argument could be used to justify any medical issue. Let me ask you this question. Let's say a district judge is presented with a case, an injunction request, where you have an inmate with some condition. The inmate says he needs a certain accommodation. The prison says, listen, we're giving this guy tons of attention, tons of care. We disagree that that's good for him or that he needs that, and we have a solid basis for that. So we have that, but let's say the district court thinks the inmate is credible when he says I'm going to kill myself if I don't get my knee brace. What should the judge do? Well, that's a good question. And that's what happened here, essentially. And I suggested to Judge Tarnow, I said, I think. He's going to look pretty bad if we reverse him and he kills himself. I told Judge Tarnow, I said, I thought the better course of action was to get him some mental health treatment as opposed to ordering us to provide him with these medical appliances that he doesn't need and that are probably not good for him. I don't know. You did have a psychiatrist evaluate him, as I read the record. They have, yes. He said he's not suicidal. In fact, he's not even taking his Tylenol, even though he says his pain is driving him to distraction. Correct. And he says, I'd rather have narcotics. That's the kind of thing that we have to deal with all the time. But it's here. It's just that I understand that Judge Tarnow was coming from a. . . What's a good way to resolve this case? Let's say you're right, that the standards for preliminary injunction have not been met. There's not enough evidence. So we buy that part of your argument. There's jurisdiction to resolve the case. Do you have any suggestions as to how to get this resolved? Because it doesn't seem like a great use of a lot of people's time. Any thoughts on that? That's my life. Right, so we're here to help. The district judge is everywhere. The relief I think that would help the best would be to vacate this. I mean, this is a principle. No, no, no. You don't answer my question by saying just give me what I want. What's going to happen on remand? That's what I mean. You know, we have our co-defendants as well who represent the doctors. I represent the nurses and the other medical people that the MDOC employ. We're going to take his deposition. We're going to find out, you know, we're going to look at his earlier medical history. We're going to get those records. We'll take his deposition. It'll be a typical case. So I guess the point is we'll follow the evidence where it goes. And then we'll file a motion for summary judgment at the end. Close the discovery. We'll file a motion. And if we win, great. If not, you know, we may run up here. Oftentimes we find it in my office, at the Attorney General's office, we find we're doing less and less appeals because it's easier to try these cases. I can try these cases in a day, day and a half or whatever. And they're not hard. It's actually more work to take an appeal and come down to Cincinnati and argue them. You don't enjoy this, huh? Well, I have a trial. That's what the judge did, perhaps. I have to run back. I have a trial. I've got a lot of stuff going on. All right. Well, we'll give you some rebuttal. Oh, thank you. So is it Mr. Weed, I think? All right. Good morning. May it please the Court. Jeffrey Weed, assigned pro bono counsel for Richard Boone. Judge Sutton, to address a comment that you made a moment ago, I agree that having previously worked at an appellate court, a state-level appellate court, I think that the instant appeal is a tremendous waste of judicial resources, as I stated in my brief. First of all, as I mentioned in the brief, I think that there is a very good question as to whether this, and I think a little more background procedurally, I was only assigned to represent this prisoner by Judge Tarnow after these events took place. But there is now a new pending motion for preliminary injunction, an attorney-drafted motion for preliminary injunction in the court below. There's also one of the first things that I did. For the same relief? Essentially for that relief and also for retaliation regarding the instant injunction. We have evidence that there's been a refusal to care for the prisoner because there is a feeling amongst the medical staff that he's suing everyone who sees him, and so we just won't touch him. After this failed record of very attentive care given to him, you're suggesting that events have occurred since that make that no longer the case? Or at least that's what's being alleged below? Yes, that's what's being alleged below. There's also a pending, and as I stated in the brief, it did not take place within the 28 days under the federal rules for a motion for reconsideration. But I wasn't on the case at that point. It was impossible, and I think it's important to... But how would a late Rule 59 motion divest this court of jurisdiction? Well, the question in my mind is not so much whether this court is divested of jurisdiction. It's whether or not it's appropriate for an appellate court to spend its time and its judicial review for this. I think you have to decide the cases that are here, so this one's here. Well, and I understand completely, but it's really a question to me. I think there are some fundamental questions of justiceability. Well, let me ask you a question about the merits. The first part of the four-part injunction test is likelihood of success. Your client has an Eighth Amendment claim. It's a deliberate and different standard, right? I mean, so far as I can tell, the state is hardly indifferent. I mean, they have a nurse seeing him twice a day. The chief physician has seen him. It seems like they're devoting an exceptional amount of attention to him rather than just sort of disregarding him. And just looking at that factor, tell me why that does not strongly favor your opponent here when the standard is deliberate and different. Well, the reason that I would state that that doesn't favor my opponent here is this. Not only is this a situation where MDOC wasn't being asked to supply these medical devices, the prisoner brought these medical devices himself. In the record below, this is not, as is alleged in opposing counsel's brief. And mind you, this is all at a preliminary injunction stage where, frankly, the only side so far that has much in the way of properly presented evidence is my improper prisoner. The Michigan Department of Corrections and their co-defendants have not done discovery in this case. There's not much. Well, you don't dispute that they've lavished all this medical attention on him, do you? There is a dispute, first of all, regarding... As you know, do you dispute that they have a nurse that sees him twice a day, that he's seen the chief physician, that there's been a quite substantial amount of medical attention given to his condition? Is that fair? That is in dispute. It is? It is factually in dispute. In fact, in the brief on appeal, at one point I state, other than reading in the report of the chief physician who had opposing counsel mentions had reviewed the treatment plan, he had never actually seen Mr. Boone. And there's a difference. The situation here, in my mind, is this, is a judge sitting in equity, a district court judge sitting in equity in this situation, where you have the governmental entity admitting this is no burden on us. In fact, we don't even... You're getting way... That's a later step. I'm focused on the first prong. And it's the burden of the party who wants the injunction, right, to make the demonstration. Yes. So, I mean, where in the... And I understand, you know, he's pro per, and you've come in. But, I mean, where is the showing of indifference as to their treatment of him? Actually... There is no showing, right? I apologize because this is not in the brief on appeal here today. But in the later motion, the motion for a preliminary injunction that's pending in the court below... This is beyond the record in front of us. I understand that. And, however... However what? It's down to... I understand that, period. I mean, there's nothing... I actually don't even want to know, to be honest. Can I ask a question, though, about the record that we do have? Yes. Did the district judge have before him the prison internal records of the medical care that the prisoner had received? Yes. He had voluminous... Right. So he had a record that clearly established that there had been a lot of care given over an extended period on a frequent basis. Yes. There's a reason it's voluminous. And that's... Exactly. And why isn't that combined with, even though there was a dispute as to whether it was enough, that's the classic dividing line between what courts say, sorry, you're just disagreeing over preferred treatment. We don't consider that a constitutional claim. And courts saying, yes, you may have crossed the threshold to state a value of a valid 1983 claim. We don't have... If you've got that evidence in the record... Well, and what I was... What do you do with that? What I was attempting, and again, I do apologize, but it was not discovered and briefed at this level. However, there are six circuit precedents to the fact that when you're dealing with an Eighth Amendment and deliberate indifference case, that the legal elements of that claim, that when you look to that deliberate indifference, there are the two prongs in that analysis. One of them is an intent prong. And when you're looking at injunctive relief and it's an ongoing situation, that knowledge of the situation portion of the prong goes away because obviously there's knowledge of the situation. We're in federal court discussing it, so it's not that you don't know that he doesn't have the air mattress. It's not that you don't know that he's in pain. I don't understand what that does for you. I mean, state of mind can always be a relevant fact, but you still have to have some evidence of deliberate indifference. I mean, I'm really curious on the air mattress. So, I mean, I can understand an air mattress for a little while after a hip operation, but I've had two hips done. It never occurred to me you get an air mattress for life. I'm going to talk to my wife when I get home. I had no idea. I can see it for a while. That makes perfect sense. I don't see it forever. What's the medical explanation for forever? In the record below, and that is one thing that I wanted to bring up, is that actually Dr. Urquhart, who is an assistant professor in the department of orthopedic surgery, joint reconstruction at the University of Michigan, so not just a surgeon. But does he say forever? He said permanently. But that was back in 2008, right? That was in 2008. But his opinion at that point and... Was there something unique about your client that would explain that? I think that the unique aspect of my client's situation is that there was not just one incident with a hip replacement. It's that he is overweight, as opposing counsel stated, and is trying to work on that. But he's had a total hip replacement and subsequently was in another accident where the tibia was removed entirely from the socket and then it had to be reconstructed a second time. So things haven't gotten better since 2008. Basically... But there's no new evidence about the air mattress after the second problem. I realize I get the point that that supports it, but I'm just saying there's no more medical evidence after that second. No. And really, my argument in terms of that is, as I admit in the brief on appeal, there's nothing in the written opinion addressing the four factors. But another issue of justiciability that I'd like to just bring to the court's attention is the issue of were these arguments properly preserved in the court below. Because there were three attorneys for the co-defendants present at this hearing. My improper client was present only by video conference. And ostensibly, these three trial attorneys are aware that there is a four-factor test for granting preliminary injunctions. They know that that test exists, etc. They never made any argument whatsoever in the court below. Instead, they decide within a matter of days of Judge Tarnow's decision to raise an interlocutory appeal and have this court decide it. And that's really the crux of my argument on appeal. First of all, this falls under a very deferential standard. Judge Tarnow did have evidence in front of him. It's not true that it was just the unsworn statements of a prisoner. He had in front of him evidence that an expert orthopedic surgeon that teaches at the University of Michigan had said that this person should sleep on an air mattress permanently. That he brought it with him to prison and that it was taken away by a nurse essentially out of avarice. And the balance of the equities. This is a judge sitting in equity. Yes, it is a four-pronged test. And yes, there are precedents in this circuit saying that usually a finding that there's no chance of success on the merits will be fatal. However, in the record below, this is a case where the magistrate judge, the recommendation report was to dismiss this case. Judge Tarnow wrote an opinion saying no. This prisoner has stated a tolerable claim and so on. Was that actually an opinion? Is that separate from the order we have here, which I would not say is an opinion. Is this a different document you're talking about? Yes, it was an order denying the recommendation of the magistrate. Is that a reasoned opinion? It does not because at that point it was prior to discovery. And that's the thing. Another aspect of this in my mind is, as members of the panel have stated, this is a situation where Judge Tarnow, particularly in referencing the case he did reference, he showed in his mind there were two crucial elements of the four-pronged test. It cost MDOC nothing to give this air mattress. And on the flip side, we have an improper individual who he was about to assign counsel to who might kill himself in the interim. And he made a determination that based on the four factors that, and of course that is subject to abusive discretion, is his balancing of the factors. And I think in this case I agree, Judge Sutton, that for the price of an air mattress, is that worth the potential of a man taking his own life? And that's really, to me, the position Judge Tarnow is in. I see my time is up, and so if there are any questions. Okay, no, thank you. Appreciate it. Mr. Farrell, rebuttal? Briefly in rebuttal, I would simply just point out that, you know, the trial court can't issue policy from the bench. You know, he's got to find a constitutional violation. He's got to find that we're not taking care of his, that we're somehow violating his rights, and there was just no finding of that. There was no evidence presented of it, and there was no findings by the court. Thank you. Any questions? Appreciate it, Mr. Farrell. I appreciate the panel's time. Thank you. And thank you, Mr. Weed. I see you're pro bono, so we appreciate it, and I'm sure Mr. Boone does as well. So thank you for your help here. The case is submitted.